1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10

11

12   STANLEY V. LANGEVIN, an
individual,

13
　　　　　　　　　Plaintiff,

14
　　　　　　vs.

15
FEDERAL EXPRESS CORPORATION,

16   a corporation; STEVEN B. SOBCZAK,
an individual; WILLIAM CUSATO, an

17   individual; JACK EARLS, an individual;
and DOES 1 through 100, inclusive,

18
　　　　　　　　Defendants.

19

)　CASE NO. CV 14-08105 MMM (FFMx)
)
)
)　ORDER DENYING PLAINTIFF'S
)　MOTION TO REMAND AND GRANTING
)　DEFENDANTS' MOTION TO DISMISS
)　AND DENYING DEFENDANTS'
)　MOTION FOR A MORE DEFINITE
)　STATEMENT
)
)
)
)
)
)
)

20　　　　　On September 12, 2014, Stanley V. Langevin filed this action against Federal Express

21   Corporation ("FedEx"), Steven B. Sobczak, William Cusato, Jack Earls, and various fictitious

22   defendants (collectively, "defendants") in Los Angeles Superior Court.[1]  The complaint pleads

23   claims for retaliation in violation of public policy;[2] violation of California Labor Code § 1102.5

24

25

26
　　　　　　　　　　　　　　　　　

27　　　　　[1]Notice of Removal ("Removal"), Docket No. 1 (Oct. 20, 2014), Exh. A ("Complaint")
at 1.

28
　　　　　[2]Complaint, ¶¶ 21-25.

*et seq.*;[3] and intentional infliction of emotional distress.[4]   The first and second causes of action name all defendants; the third claim is asserted only against FedEx, Cusato, and Earls.

Defendants were served on September 23, 2014.[5]   They timely removed the action on October 20, 2014, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332(a).[6]   In their notice of removal, defendants asserted that Sobczak, Cusato, and Earls were sham defendants, who were fraudulently joined to defeat diversity and divest the federal court of jurisdiction.[7]

On November 10, 2014, defendants filed a motion to dismiss Langevin's first, second, and third causes of action against Sobczak, Cusato, and Earls (collectively, the "individual defendants") under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to sever the individual defendants for misjoinder under Rule 21.[8]   On November 18, 2014, Langevin filed a motion to remand to Los Angeles Superior Court.[9]   Langevin opposed defendants' motion to dismiss on February 11, 2015,[10] and two days later, on February 13, 2015, defendants opposed

---

[3]*Id.*, ¶¶ 26-29.

[4]*Id.*, ¶¶ 30-36.

[5]Removal, Exh. B.

[6]*Id.* at 1.

[7]*Id.*, ¶¶ 23-27.

[8]Notice of Motion and Motion to Dismiss Jack Earls, Does, Steven B. Sobczak, and William Cusato ("MTD"), Docket No. 27 (Nov. 10, 2014).  See also Reply in Support of Motion to Dismiss Jack Earls, Does, Steven B. Sobczak, William Cusato ("MTD Reply"), Docket No. 44 (Feb. 11, 2015).

[9]Notice of Motion and Motion to Remand Case to Los Angeles Superior Court ("MTR"), Docket No. 29 (Nov. 18, 2014).  See also Reply in Support of Motion to Remand Case to Los Angeles Superior Court ("MTR Reply"), Docket No. 54 (Feb. 23, 2015).

[10]Memorandum in Opposition to Motion to Dismiss Jack Earls, Does, Steven B. Sobczak, William Cusato ("MTD Opposition"), Docket No. 43 (Feb. 9, 2015).

1   Langevin's motion.[11]   Also on February 13, 2015, the Access to Courts Initiative, American

2   Coatings Association, Inc., and California Employment Law Council filed applications to appear

3   as *amici curiae* and file briefs in opposition to Langevin's motion to remand.[12]   The court denied

4   the applications the same day.[13]

5        Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court

6   finds this matter appropriate for decision without oral argument.   The hearing calendared for

7   March 9, 2015, is therefore vacated, and the matter taken off calendar.

8

9                                 **I.   FACTUAL BACKGROUND**

10   **A.      The Parties**

11        FedEx is a Delaware corporation that provides personal and commercial delivery services

12   throughout the United States and worldwide.[14]   To facilitate its services, FedEx maintains aircraft

13   at various airports in the United States, including Los Angeles International Airport ("LAX").[15]

14   Plaintiff Stanley V. Langevin is an aircraft maintenance technician ("AMT") with more than forty

15   years of experience.[16]   Langevin first trained as an AMT while serving in the United States Air

16   Force from 1969 to 1973.[17]   After being discharged from the Air Force, he continued to perform

17   aircraft maintenance; on August 1, 1983, Langevin went to work as an AMT for Flying Tigers

18

19        [11]Opposition Re: Motion to Remand Case to Los Angeles Superior Court ("MTR

20   Opposition"), Docket No. 51 (Feb. 13, 2015).

21        [12]Notice of Motion and Motion to File *Amicus* Brief, Docket No. 45 (Feb. 13, 2015);

22   Application for Leave to File *Amicus* Brief, Docket No. 48 (Feb. 13, 2015).

23        [13]Order Denying Application for Leave, Docket No. 50 (Feb. 13, 2015); Order Denying

24   Motion for Leave, Docket No. 52 (Feb. 13, 2015).

25        [14]Complaint, ¶ 4.

26        [15]*Id.*, ¶ 11.

27        [16]*Id.*, ¶ 14.

28        [17]*Id.*

3

1   Airline at LAX.[18]  He became employed by FedEx in August 1989, when Flying Tigers merged

2   with FedEx.[19]  During his employment with the company, Scott has been supervised by Steven

3   B. Sobczak, William Cusato, and Jack Earls.[20]

4       **B.**    **General Background Regarding Aircraft Maintenance**

5           Commercial airlines, including FedEx, are required to following regulations promulgated

6   by the Federal Aviation Administration ("FAA").[21]  The regulations regarding aircraft

7   maintenance are designed to ensure that aircraft are in good repair and can fly safely.[22]  Airlines

8   routinely share maintenance equipment and technicians to ensure that all aircraft are serviced

9   properly and meet FAA regulations prior to flying.[23]  FedEx purportedly has contractual

10  obligations to provide maintenance support and assistance to other international airlines when they

11  require assistance.[24]  Langevin alleges that FedEx assists other carriers once or twice a month and

12  also receives assistance from other airlines on a regular basis.[25]

13          AMTs working for FedEx at LAX work one of two shifts – a day shift and a swing shift.[26]

14  AMTs were assigned to one or the other; Langevin worked the swing shift, which typically ran

15  from 1:30 p.m. to 10:00 p.m.[27]  At the beginning of each shift, FedEx purportedly assigned its

16

17  ───────────────

18  [18]*Id.*

19  [19]*Id.*

20  [20]*Id.*, ¶¶ 5-7.

21  [21]*Id.*, ¶¶ 11-12.

22  [22]*Id.*, ¶ 12.

23  [23]*Id.*

24  [24]*Id.*, ¶ 13.

25  [25]*Id.*

26  [26]*Id.*, ¶ 16.

27  [27]*Id.*

28

4

AMTs to service a particular aircraft during the shift.[28]  After completing all required maintenance and service, the AMT was allegedly required to complete a maintenance report outlining the work performed, and confirming that the repair and maintenance work satisfied the FAA's Federal Aviation Regulations ("FARs").[29]  In the event an AMT was not able to compete all required maintenance during his or her shift, he was required to complete a "turn-over form," which assigned the unfinished aircraft maintenance and repair to an AMT working the next shift.[30]

### C.    Defendants' Purported Harassment of Plaintiff

Langevin alleges that, for the majority of his time at FedEx, he was regularly recognized as an exceptional employee – receiving numerous awards, recognition, and good performance reviews from his superiors.[31]  He asserts that FedEx and other airlines based at LAX relied heavily on him to solve numerous aircraft maintenance issues given his extensive experience and expertise as an AMT.[32]

Langevin contends that FedEx and his supervisors began to interact with him in a hostile manner following his discovery that FedEx's day shift AMTs, supervisors, and managers routinely returned aircraft to service that did not comply with the FARs.[33]  He asserts that he reviewed the turn-over forms he received from day shift AMT to assess what work had been done on the aircraft.[34]  Langevin then inspected the aircraft, and allegedly discovered that the service purportedly performed by day shift AMTs either had not been performed or had been performed

---

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*, ¶ 15.

[32]*Id.*

[33]*Id.*, ¶ 17.

[34]*Id.*

in a manner that did not comply with the FARs.[35]  He contends FedEx purportedly returned aircraft to service without failing to repair corrosion; purportedly in some cases, the corrosion was sufficiently extensive that it caused the aircraft skin to crack.[36]  Langevin asserts that the failure to maintain FedEx aircraft adequately was a "calculated, illegal scheme" undertaken to increase the company's profits.[37]

Upon discovery of the maintenance issues, Langevin purportedly complained, both verbally and in writing, to his supervisors, managers, co-workers, and quality control engineers.[38]  He asserts that, rather than investigating his complaints, FedEx, through his supervisors, began to retaliate against him.[39]  It purportedly did this (1) repeatedly writing him up and suspending him for fabricated and pretextual reasons; (2) yelling and screaming at him; (3) meeting with Langevin's co-workers and asking for "dirt" on Langevin that could be used to discipline and/or demote him; (4) treating Langevin in a hostile, rude manner and shunning him; and (5) demoting Langevin from his position as a Lead AMT despite his qualifications for the position.[40]

---

[35]*Id.*

[36]*Id.*, ¶ 18.

[37]*Id.* ("Plaintiff uncovered a calculated, illegal scheme by FedEx whereby FedEx routinely and knowingly returned non-airworthy aircraft to service despite need for further repair/maintenance in order to comply with the FARs; the condition of these aircraft did not satisfy the legal requirements of the FARs and were not safe for flight.  FedEx was more concerned with returning the aircraft to flight quickly in order to increase their profits than with ensuring compliance with the FARs").

[38]*Id.*, ¶ 19.

[39]*Id.*

[40]*Id.*, ¶ 20.

**D.    Plaintiff's Claims**

As noted, based on these facts, Langevin pleads claims for retaliation in violation of public policy;[41] violation of California Labor Code § 1102.5;[42] and intentional infliction of emotional distress.[43]   The first two of these claims are asserted against all defendants; the third cause of action is directed against FedEx, Earls, and Cusato.

## II.  DISCUSSION

**A.    Plaintiff's Motion to Remand**

### 1.    Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute.   See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).   The removal statute, 28 U.S.C. § 1441, allows a defendant to remove a case originally filed in state court if it presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000.   See 28 U.S.C. § 1441(a), (b); see also 28 U.S.C. § 1331, 1332(a).   Only state court actions that could originally have been filed in federal court can be removed.   28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."   *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064).   "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."   *Id.* (citing *Nishimoto v. Federman-Bachrach & Associates*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

---

[41]*Id.*, ¶¶ 21-25.

[42]*Id.*, ¶¶ 26-29.

[43]*Id.*, ¶¶ 30-36.

2.   **Whether the Court Should Remand the Action to Los Angeles Superior Court**

As noted, defendants contend that the court has diversity jurisdiction to hear this action.[44] "The district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between . . . citizens of different States." 28 U.S.C. § 1332(a); see also *Matheson v. Progressive Speciality Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806); see also *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 & n. 3 (1996).[45]

---

[44]The court does not have federal question jurisdiction to hear the action because Langevin has alleged only state law claims. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

[45]In their notice of removal, defendants argue, at length, that minimal diversity between plaintiff and defendants is all the Constitution requires and all the Framers of the Constitution intended to invoke federal jurisdiction. (See Removal, ¶¶ 11-42.) Defendants, however, abandon this contention in their opposition to Langevin's motion to remand. (See generally MTR Opposition.) As a result, the court need not address the question. The court observes, however, that the United States Supreme Court has held that § 1332(a) requires complete diversity. See *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 553-54 (2005) ("We have not, however, applied *[United Mine Workers v. ]Gibbs*'[, 383 U.S. 715 (1966),] expansive interpretive approach [to supplemental jurisdiction] to other aspects of the jurisdictional statutes. For instance, we have consistently interpreted § 1332 as requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action. *Strawbridge v. Curtiss*, 3 Cranch 267 . . . (1806); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375 . . . (1978). The complete diversity requirement is not mandated by the Constitution, *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530-31 (1967), or by the plain text of § 1332(a). The Court, nonetheless, has adhered to the complete diversity rule in light of the purpose of the diversity requirement, which is to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state

### a.   Langevin's Citizenship

A person is a citizen of the state in which he is domiciled, i.e., the state in which he has a permanent home where he intends to remain or to which he intends to return.  See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return").  "The status of the parties' citizenship . . . can be determined from the complaint or from other sources, including statements made in the notice of removal."  *HSBC Bank USA, NA v. Valencia*, No. 09-CV-1260-OWW-JLT, 2010 WL 546721, *2 (E.D. Cal. Feb. 10, 2010); see also *Kanter*, 265 F.3d at 857 (examining the complaint and notice of removal to determine citizenship).

Langevin's complaint alleges only that he is a resident of California.[46]  In the notice of removal, defendants assert he is a California citizen.[47]  To support this contention, they rely on the declaration of La Shauna Hale-Johnson, a senior paralegal at FedEx.[48]  Hale-Johnson states that, according to FedEx employee records, Langevin has lived and worked in California since at least 1989.[49]  Defendants also rely on Langevin's allegations that he is a California resident and

---

litigants.  The presence of parties from the same State on both sides of a case dispels this concern, eliminating the principal reason for conferring § 1332 jurisdiction over any of the claims in the action.  See *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 389 . . . (1998); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 . . . (1989).  The specific purpose of the complete diversity rule explains both why we have not adopted *Gibbs*' expansive interpretive approach to this aspect of the jurisdictional statute and why *Gibbs* does not undermine the complete diversity rule").  The court is bound to apply Supreme Court precedent, see *United States v. Rosenau*, 870 F.Supp.2d 1109, 1115 (W.D. Wash. 2012) ("[T]his Court is bound to follow directly applicable Supreme Court precedent until it is clearly overruled"), and concludes that defendants' argument regarding minimal diversity fails.

[46]Complaint, ¶ 3.

[47]Removal, ¶ 3.

[48]See Declaration of La Shauna Hale-Johnson in Support of Defendants' Notice of Removal ("Hale-Johnson Decl."), Docket No. 3 (Oct. 20, 2014).

[49]*Id.*, ¶¶ 3-4.

1   has worked at Los Angeles International Airport as an aircraft technician since August 1, 1983.[50]

2   From these allegations, it appears that Langevin has lived and worked in California for twenty-six

3   to thirty-two years.  The court concludes this evidence is sufficient to establish that he is a citizen

4   of the state.  See *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("[D]etermination of an

5   individual's domicile involves a number of factors (no single factor controlling), including: current

6   residence, voting registration and voting practices, location of brokerage and bank accounts,

7   location of spouse and family, membership in unions and other organizations, place of

8   employment or business, driver's license and automobile registration, and payment of taxes").

9                                   **b.     FedEx's Citizenship**

10          FedEx is a corporation.  A corporation is "deemed to be a citizen of every State and

11   foreign state by which it has been incorporated and of the State or foreign state where it has its

12   principal place of business."  28 U.S.C. § 1332(c)(1).  The term "principal place of business"

13   means "the place where a corporation's officers direct, control, and coordinate the corporation's

14   activities.  It is the place that Courts of Appeals have called the corporation's 'nerve center.'  And

15   in practice it should normally be the place where the corporation maintains its headquarters –

16   provided that the headquarters is the actual center of direct, control, and coordination[.]"  *Hertz*

17   *Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

18          FedEx asserts it is a Delaware corporation with its principal place of business in Tennessee,

19   and that it is thus a citizen of both states.  Langevin argues that defendants have not carried their

20   burden of showing that FedEx's principal place of business is its corporate headquarters in

21   Memphis, Tennessee.[51]  He asserts that "[u]nder settled Ninth Circuit law, the 'place of operations

22   test' holds that a corporation's principal place of business is the state that 'contains a substantial

23   predominance of corporate operations,'" and contends that FedEx has failed to adduce sufficient

24

25

26   _____

27          [50]See Complaint, ¶¶ 3, 14.

28          [51]MTR at 18-23.

1   evidence to demonstrate that a "substantial predominance" of its operations are in Tennessee.[52]

2   The substantial predominance test was rejected by the Supreme Court in *Hertz*. See *Morello v.*

3   *Amco Ins. Co.*, No. C 11-6623 SI, 2012 WL 628911, *2 n. 1 (N.D. Cal. Feb. 27, 2012) ("In [

4   ] holding [that the corporation's 'nerve center' was its principal place of business], the Supreme

5   Court resolved a conflict between the circuits in the application of the test for corporate

6   citizenship. Much of the parties' briefing discusses the 'substantial predominance' place of

7   operations test set forth in *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495

8   (9th Cir. 2001) (per curiam), which was *abrogated* by *Hertz Corp.*" (emphasis original)). Instead,

9   a corporation's principal place of business is its "nerve center," i.e., "the place where a

10  corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp.*,

11  559 U.S. at 92-93.

12      In support of the notice of removal, defendants proffer the declaration of Shahram A.

13  Eslami, FedEx's Staff Director of Securities and Corporate Law. Eslami he states that FedEx's

14  principal place of business is Memphis, Tennessee, where the majority of FedEx's high level

15  officers, including its President & Chief Executive Officer, Chief Operating Officer, Chief

16  Financial Officer, General Counsel, and Chief Human Resources Officer work.[53] In support of

17  their opposition to the remand motion, defendants submit the Declaration of Connie Lewis

18  Lensing, FedEx's Senior Vice President of Litigation and Employment.[54] Lensing states that the

19  individuals responsible for FedEx's domestic operations maintain their primary offices in

20  Memphis, Tennessee.[55] She asserts that FedEx's Chief Executive Officer, Chief Operating

21  Officer, Chief Financial Officer, Chief Human Resources and Diversity Officer, Executive Vice

---

23  [52]*Id.* at 19-20.

24  [53]Declaration of Shahram A. Eslami in Support of Notice of Removal of Civil Action

25  Under Article III of the U.S. Constitution and 28 U.S.C. §§ 1332, 1441, and 1446 ("Eslami
    Decl."), Docket No. 5 (Oct. 20, 2014), ¶¶ 2-3.

26  [54]Declaration of Connie Lewis Lensing In Support Of Opposition to Motion to Remand

27  ("Lensing Decl."), Docket No. 51-4 (Feb. 13, 2015).

28  [55]Lensing Decl., ¶ 2.

1  President of Air Operations, and two Senior Vice Presidents of Legal, including the General

2  Counsel, work at FedEx's headquarters in Tennessee and regularly hold meetings in which they

3  make decisions that dictate corporate policy.[56]

4       These declarations are sufficient to demonstrate the FedEx has its principal place of

5  business, i.e., the place where its "high level officers direct, control, and coordinate the

6  corporation's activities," in Memphis, Tennessee.  The court therefore concludes that FedEx is

7  a citizen of Delaware and Tennessee.

8                    **c.    The Individual Defendants' Citizenship**

9       The complaint alleges that all of the individual defendants are California residents.[57]  In the

10 notice of removal, defendants concede that Sobczak, Cusato, and Earls are citizens of California;

11 they argue, however, that their citizenship should be disregarded because each was fraudulently

12 joined.[58]  If all of these parties were fraudulently joined, diversity jurisdiction will exist; if even

13 one was not, the action will have to be remanded for lack of subject matter jurisdiction.  See

14 *Hornby v. Integrated Project Management, Inc.*, No. CV 14-04331 LB, 2014 WL 7275179, *7

15 (N.D. Cal. Dec. 22, 2014) ("Based on the above, the court finds that Ms. Hornby has at least 'one

16 potentially valid claim against a non-diverse defendant,' and thus Defendants have not met their

17 heavy burden to show that she could not possibly recover against Mr. Georgiades or Mr. Piehl");

18 *Knutson v. Allis Chalmers Corp.*, 358 F.Supp.2d 983, 993 (D. Nev. 2005) ("In order to establish

19 that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim

20 against a non-diverse defendant," citing *Gray v. Beverly Enterprises-Mississippi*, 390 F.3d 400,

21 411-12 (5th Cir. 2004) ("Although our fraudulent joinder decisions have never made the issue

22 entirely pellucid, § 1441's holistic approach to removal mandates that the existence of even a

23

24       [56]*Id.*, ¶¶ 2-3.

25       [57]Complaint, ¶¶ 5-7.

26       [58]Removal, ¶ 18 ("Defendants Steve Sobczak, William Cusato, and Jack Earls are

27 domiciled in California.  Each of them has lived and worked in California for many years and has

28 the present intention to remain in California.  The individual defendants are citizens of the State
   [of] California").

                                        12

1   single claim of action against in-state defendants (despite the pleading of several unavailing claims)

2   requires remand of the entire case to state court")).

3                              **(1)   Legal Standard Governing Fraudulent Joinder**

4           The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship

5   is disregarded for purposes of assessing subject matter jurisdiction, "[i]f the plaintiff fails to state

6   a cause of action against the [non-diverse] defendant, and the failure is obvious according to the

7   settled rules of the state. . . ."   *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203,

8   1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.

9   1987)).   "It is a commonplace that fraudulently joined defendants will not defeat removal on

10  diversity grounds."   *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing

11  *Emrich*, 846 F.2d at 1193 & n. 1; *McCabe*, 811 F.2d at 1339); see also *Burden v. General

12  *Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had

13  subject matter jurisdiction where a defendant charged with intentional infliction of emotional

14  distress had been fraudulently joined).   Defendants alleging fraudulent joinder must prove that

15  individuals joined in the action cannot be liable on any theory.   *Ritchey*, 139 F.3d at 1318; see also

16  *McCabe*, 811 F.2d at 1339 (stating that a removing defendant is entitled to present facts showing

17  that joinder is fraudulent); *Campana v. American Home Products Corp.*, No. 1:99cv250 MMP,

18  2000 WL 35547714, *3 (N.D. Fla. Mar. 7, 2000) ("The removing party must show with credible

19  evidence that there is no possibility that a plaintiff can state a cause of action against the

20  nondiverse defendant").

21          "Merely showing that an action is likely to be dismissed against [a] defendant does not

22  demonstrate fraudulent joinder.   Rather, it must appear to 'a near certainty' that joinder was

23  fraudulent.   As a result, the removing defendant must establish that there is absolutely no

24  possibility that the plaintiff would be able to establish a cause of action against the in-state

25  defendant. . . .   Thus, that a claim against the in-state defendant is insufficiently pled does not

26  prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause

27  of action."   *Amarant v. Home Depot U.S.A., Inc.*, No. 1:13-cv-00245-LJO-SKO, 2013 WL

28  3146809, *6 (E.D. Cal. June 18, 2013).

Defendants must prove fraudulent joinder by clear and convincing evidence. *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Thus, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citations omitted)); see also *West American Corp. v. Vaughan Basset Furniture*, 765 F.2d 932, 936 n. 6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and other evidence); James W.M. Moore, MOORE'S FEDERAL PRACTICE § 102.21(5)(a) (3d ed. 2008) ("The federal court's review for fraud must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties").

Because it must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998)). "If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the court must remand." *Id.*; see also *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant"). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F.Supp.2d 1005, 1008 (N.D. Cal.2001).

### (2)   Whether Langevin Has Alleged Non-Fanciful Intentional Infliction of Emotional Distress Claims Against the Individual Defendants

Although the complaint names each of the individual defendants in the first and second claims alleging retaliation in violation of public policy and violation of California Labor Code

§ 1102.5,[59] Langevin only addresses his third cause of action for intentional infliction of emotional distress ("IIED") in the motion to remand.[60]   Accordingly, the court considers only whether there is a "non-fanciful" possibility that Langevin has stated or can state an IIED claim against Cusato, Earls, and/or Sobczak.[61]

A plaintiff pleading intentional infliction of emotional distress must allege (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard for the probability of causing, emotional distress; (2) that plaintiff suffered severe or extreme emotional distress; and (3) that the outrageous conduct actually and proximately caused the distress.  *Conley v. Roman Catholic Archbishop of San Francisco*, 85 Cal.App.4th 1126, 1133 (2000) (citing *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593 (1979)) ("The elements of a *prima facie* case of intentional infliction of emotional distress consist of: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) [the] suffering of severe or extreme emotional distress by plaintiff; and (3) [a finding that] plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct"); *Wilkens v. National Broadcasting Co.*, 71 Cal.App.4th 1066, 1087 (1999) (same); *Symonds v. Mercury Savings and Loan Ass'n*, 225 Cal.App.3d 1458, 1468 (1990) (same).  The defendant's conduct "must . . . be directed at the plaintiff or [take place] in the presence of the plaintiff."  *Smith v. Pust*, 19 Cal.App.4th 263, 274 (1993).  Generally, "conduct will be found to be actionable where the recitation of the facts to an average member

---

[59]See Complaint at 6, 7.

[60]See MTR at 11.

[61]It appears that the individual defendants were erroneously named in the first and second causes of action; Langevin's proposed first amended complaint names Cusato, Earls, and Sobczak as defendants only in the third cause of action.  (See Declaration of Shahane A. Martirosyan in Support of Motion to Remand Action to State Court and Motion for Leave to File First Amended Complaint ("Martirosyan Decl."), Docket No. 29-1 (Nov. 18, 2014), Exh. C ("Proposed First Amended Complaint") at 7, 9, 10.

of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Cochran v. Cochran*, 65 Cal.App.4th 488, 494 (1998).

Langevin alleges that FedEx and the individual defendants retaliated against him after he complained to managers, FedEx human resources personnel, and the Equal Employment Opportunity Commission ("EEOC") about FedEx's allegedly intentional failure to comply with all applicable FARs.[62] He asserts that the individual defendants retaliated against him "in terms and conditions of employment" by (1) repeatedly writing him up and suspending him for fabricated and pretextual reasons; (2) yelling and screaming at Langevin; (3) meeting with his coworkers and asking for "dirt" they could use to discipline and/or demote Langevin; (4) treating Langevin in a hostile and rude manner; (5) shunning Langevin; and (6) demoting Langevin from his position as a Lead AMT.[63]

The complaint alleges that the individual defendants knew their conduct would cause Langevin to suffer emotional distress; that they acted with the intent of inflicting emotional distress; and that, as a result of their actions, Langevin did in fact suffer emotional distress.[64]

Defendants argue that workers' compensation provides the exclusive remedy for Langevin's intentional infliction of emotional distress claim.[65] Under California law, workers' compensation provides the exclusive remedy for an intentional infliction of emotional distress claim that is based solely on alleged personnel activity. See CAL. LAB. CODE § 3601(a) ("Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation, pursuant to the provisions of this division is . . . the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of

---

[62]Complaint, ¶¶ 20, 23, 30-31.

[63]*Id.*, ¶ 20.

[64]*Id.*, ¶¶ 33-35.

[65]MTR Opposition at 5-8; see also *id.* at 5-6 ("The claim for IIED fails as against the individuals because: (1) it is preempted by the California Workers Compensation Act; and (2) Langevin did not allege outrageous conduct by the individual defendants, a necessary element of the claim").

his or her employment"); *Cole v. Fair Oaks Fire Protection District*, 43 Cal.3d 148, 160 (1987) ("[W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability"); *Accardi v. Superior Court*, 17 Cal.App.4th 341, 352 (1993) ("Emotional distress caused by misconduct in employment relations involving, for example, promotions, demotions, criticism of work practices, [or] negotiations as to grievances, is a normal part of the employment environment.  A cause of action for such a claim is barred by the exclusive remedy provisions of the workers' compensation law"), disapproved of on other grounds, *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 802 (2001).

Stated differently, for the California Worker's Compensation Act ("WCA") to bar an IIED claim: "(1) the employer's conduct must not contravene fundamental public policy; and (2) the employer's conduct must be within the normal risks of the employment relationship."  *Hale v. Bank of America, N.A.*, No. CV 12-10064 MMM (PJWx), 2013 WL 989968, *3 (C.D. Cal. Mar. 13, 2013) (citing *Livitsanos v. Superior Court*, 2 Cal.4th 744, 754-55 (1992) (if "the employer's conduct neither contravenes fundamental public policy nor exceeds the inherent risks of the employment," it is not actionable in a civil suit)).

Langevin argues that his IIED claim is not preempted by the WCA because it falls within the public policy exception set forth in *Livitsanos*, and because the individual defendants' conduct was not "within the normal risks of the employment relationship."[66] Defendants counter that the

---

[66]MTR at 11-12 ("It is well-established in the State of California that when the Plaintiff alleges violation of fundamental public policies of the State of California, the intentional infliction of emotional distress claim that goes along with that allegation is not confined to workers' compensation"); *id.* at 13-14 ("Requiring Plaintiff Langevin, who has a forty year career beginning his days in the United State[s] Air Force as an airplane mechanic, to sign off on unsafe airplanes, accusing him of being a thief, and threatening him with malicious prosecution are beyond the bounds of the law in the State of California and are against fundamental public policy

1    California Supreme Court's decision in *Miklosy v. Regents of the University of California*, 44

2    Cal.4th 876 (2008), forecloses Langevin's argument and demonstrates that, under clearly

3    established California law, he cannot maintain an IIED claim against his supervisors based on their

4    response to his reporting of FedEx's purportedly unlawful maintenance and service procedures.[67]

5    The court agrees.

6         In *Miklosy*, the California Supreme Court considered two computer scientists' action

7    against the University of California ("the UC") and certain supervisors, alleging that defendants

8    had retaliated against them and wrongfully terminated them as a result of complaints they had

9    made about problems related to a project on which they worked at the Lawrence Livermore

10   National Laboratory. *Miklosy*, 44 Cal.4th at 883.  Plaintiffs worked in the National Ignition

11   Facility on a project designed to determine the safety and reliability of the nation's nuclear

12   weapons stockpile. *Id.*  They identified various problems with the processes being used to test the

13   nuclear weapons, and repeatedly expressed their concerns to management, both orally and in

14   writing, about the Facility's failure to comply with regulations and various safety issues. *Id.*

15   Miklosy was terminated by his supervisors and the other plaintiff, Messina, resigned after hearing

16   that her supervisors intended to terminate her. *Id.*  They then filed a complaint against the UC

17   and their individual supervisors, alleging claims for retaliation in violation of California's

18   Whistleblower Act, wrongful termination in violation of public policy, wrongful constructive

19   termination in violation of public policy, and IIED. *Id.* at 884-85.  The trial court sustained

20   defendants' demurrer to each cause of action without leave to amend and the California Court of

21   Appeal affirmed. *Id.* at 885.

22        Plaintiffs challenged the dismissal of their IIED claim, arguing that "defendants [including

23   the supervisor defendants] engaged in 'outrageous conduct' that was intended to, and did, cause

24   _____

25   of this State.  They are unequivocally outside workers' compensation exclusivity"); MTR Reply

26   at 3 ("Defendants try to claim that Plaintiff's IIED claim based on his whistleblower allegations
     are not based on violation of fundamental public policy or express statute.  As such, Defendants[']

27   entire argument is moot").

28        [67]MTR Opposition at 6-8.

                                                  18

1  plaintiffs 'severe emotional distress,' giving rise to common law causes of action for intentional
2  infliction of emotional distress." *Id.* at 902.  The California Supreme Court rejected this argument
3  and affirmed the Court of Appeal, concluding that the WCA's exclusivity provision barred
4  plaintiffs' IIED claim against the UC and the supervisors. *Id.* ("The alleged wrongful conduct,
5  however, occurred at the worksite, in the normal course of the employer-employee relationship,
6  and therefore workers' compensation is plaintiffs' exclusive remedy for any injury that may have
7  resulted").

8      Of particular relevance here, the Supreme Court clarified the scope of the two exceptions
9  to the WCA exclusivity set forth in *Livitsanos*.  It explained that the exception for conduct that
10  "contravenes fundamental public policy" is designed solely to permit the filing of an action for
11  wrongful discharge in violation of public policy despite the workers' compensation exclusive
12  remedy rule. *Id.* at 902-03 ("Nor are the exceptions stated in *Livitsanos v. Superior Court*, of any
13  help to plaintiffs here.  The exception for conduct that 'contravenes fundamental public policy'
14  is aimed at permitting a *Tameny* action to proceed despite the workers' compensation exclusive
15  remedy rule," citing *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980)).  The Court also
16  rejected the contention that the exception for conduct that "exceeds the risks inherent in the
17  employment relationship" applied because "whistleblower retaliation is not a risk inherent in the
18  employment relationship." *Id.* at 903 ("As to the exception for conduct that 'exceeds the risks
19  inherent in the employment relationship,' it might seem at first blush to apply here – based on the
20  argument that whistleblower retaliation is not a risk inherent in the employment relationship – but
21  we rejected this same argument in *Shoemaker v. Myers*, 52 Cal.3d [1,] 25 [(1990)].  Like plaintiffs
22  here, the plaintiff in *Shoemaker* alleged whistleblower retaliation and also a *Tameny* cause of
23  action, and although he incorporated these allegations as part of his claim for intentional infliction
24  of emotional distress, we held workers' compensation to be his exclusive remedy and affirmed the
25  trial court's dismissal of that cause of action.  The same holding applies here.  Accordingly, we
26  conclude that plaintiffs' causes of action for intentional infliction of emotional distress are barred
27  by the workers' compensation exclusive remedy provision.  We affirm the judgment of the Court
28  of Appeal" (citations omitted)).

1    Following the California Supreme Court's holding in *Miklosy*, California courts have held

2    that California IIED claims are barred by the WCA's exclusivity provisions, even if they are based

3    on conduct that allegedly violates a fundamental public policy, because the *Livitsanos* public policy

4    exception operates only to permit *Tameny* actions for wrongful termination in violation of public

5    policy, not IIED claims.  See, e.g., *Thibeaux v. GEO Group, Inc.*, No. 13-CV-291-BEN (MDD),

6    2014 WL 6693782, *3 (S.D. Cal. Nov. 25, 2014) ("[T]he California Supreme Court has ruled

7    that the exception for conduct that contravenes public policy is aimed at permitting a *Tameny*

8    action for wrongful discharge to proceed.  An IIED claim based on the same allegations may

9    nonetheless be barred" (citation omitted)); *Smith v. Lowe's Hiw, Inc.*, No. 2:13-CV-1713 WBS

10   (AC), 2014 WL 1419655, *6 (E.D. Cal. Apr. 14, 2014), report and recommendation adopted,

11   No. 2:13-CV-1713 WBS (AC), 2014 WL 1910804 (E.D. Cal. May 13, 2014) ("Some California

12   courts have held that claims of intentional and negligent infliction of emotional distress that are

13   based on an employer's conduct that contravenes fundamental public policy or exceeds the risks

14   inherent in the employment relationship are not subject to workers' compensation law preemption.

15   The California Supreme Court, though, has subsequently clarified that . . . the exception for

16   conduct that 'contravenes fundamental public policy' simply means that a wrongful termination

17   claim is not preempted by the worker's compensation exclusive remedy rule (but the intentional

18   infliction of emotional distress claim is)" (citations omitted)); *Ferretti v. Pfizer, Inc.*, No. 11-CV-

19   04486, 2012 WL 3638541, *12 (N.D. Cal. Aug. 22, 2012) ("The *Miklosy* Court reasoned that

20   the first exception . . . was meant to permit actions for wrongful termination in violation of a

21   public policy (and not IIED claims)"); *Klip v. Marine Spill Response Corp.*, No. C-11-06496

22   EDL, 2011 WL 7268192, *3 (N.D. Cal. Feb. 9, 2011) ("The *Miklosy* court held that where the

23   plaintiff alleged a *Tameny* public policy claim as part of his claim of IIED, only the underlying

24   public policy claim may proceed and workers' compensation [is] the exclusive remedy for the

25   accompanying IIED.  A public policy violation as defined in *Tameny* allows plaintiffs to proceed

26   on public policy claims while remedies based on accompanying IIED claims remain exclusive to

27   workers' compensation law. . . . Under *Miklosy*, Plaintiff's claim for termination in violation of

28   public policy may proceed, but Plaintiff cites no authority that would permit him to go forward

with the IIED claim"); *Webb v. County of Trinity*, 734 F.Supp.2d 1018, 1034 (E.D. Cal. 2010) ("*Miklosy* was careful to distinguish claims for intentional infliction of emotional distress from, for example, [*Tameny*] claims that an employee was terminated for whistle-blowing.   Thus, although the worker's compensation exclusivity rule may not bar other potential state law claims and does not limit the federal claims, plaintiff's claim for intentional infliction of emotional distress is barred"); *Yau v. Santa Margarita Ford, Inc.*, 229 Cal.App.4th 144, 161 (2014) ("[*Miklosy*] held the exception to workers' compensation preemption for employer 'conduct that contravenes fundamental public policy' is aimed at permitting a *Tameny* action [for wrongful discharge in violation of public policy] to proceed despite the workers' compensation exclusive remedy rule" (citations omitted)).

   Langevin argues that his IIED claim can nonetheless proceed because it is "dependent upon the violation of an express statute or violation of fundamental public policy."[68]   He asserts the claim is not preempted by the WCA because the individual defendants subjected him to "unlawful treatment" after he filed a whistleblower complaint by, *inter alia*, requiring him to do "illegal acts," i.e., perform and/or approve repairs in violation of the FARs.[69]   Beyond the fact that Langevin neither pleads nor identifies a "fundamental public policy" that allegedly supports his IIED claim,[70] the argument fails because, as noted, under well-established California law

---

[68]MTR Reply at 3.

[69]*Id.*

[70]In context, however, it is likely that the public policy to which Langevin alludes is found in California Labor Code § 1102.5, which forms the basis for his second cause of action.   Section 1102.5 provides:

   "(a)   An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a local, state,

following *Miklosy*, the "fundamental public policy" exception to the WCA's exclusivity rule is *limited to permitting* plaintiffs to assert wrongful discharge in violation of public policy claims, i.e., *Tameny* claims, *not* IIED claims.

The authority cited by Langevin in his moving papers and reply – *Gantt v. Sentry Insurance*, 1 Cal.4th 1083, 1100 (1992); *Smith v. International Brotherhood of Electrical Workers*, 109 Cal.App.4th 1637, 1658 (2003); *Phillips v. Gemini Moving Specialists*, 63 Cal.App.4th 563, 563 (1998); *Leibert v. Transworld Systems, Inc.*, 32 Cal.App.4th 1693, 1706-07 (1995); and *Accardi v. Superior Court*, 17 Cal.App.4th 341, 352-53 (1993) – is not to the contrary.[71]  Although in each of these cases, the court concluded that an IIED claim was not preempted under *Livitsanos*, all of the decisions preceded *Miklosy*.  It was in *Miklosy* that the California Supreme Court clarified the scope of the *Livitsanos* fundamental public policy exception to WCA exclusivity, holding that it operates only to permit assertion of a *Tameny* wrongful discharge in violation of public policy claim, *not* an IIED claim.

---

or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties;

(b)   An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties;

(c)   An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation;. . ." CAL. LAB. CODE § 1102.5.

[71]MTR at 11-12; MTR Reply at 3-4.

Accordingly, to the extent the authority Langevin cites purportedly demonstrates that he can assert an IIED claim based on a fundamental public policy violation under *Livitsanos*, it is no longer good law following *Miklosy*.  See *Yau*, 229 Cal.App.4th at 161 ("Yau relies on a series of cases that have found exceptions to this general rule of preemption when the intentional infliction of emotional distress claim is based on conduct that violates a fundamental public policy.  . . . Those cases were decided before our Supreme Court's decision in *Miklosy* . . . , which held the exception to workers' compensation preemption for employer 'conduct that "contravenes fundamental public policy" is aimed at permitting a *Tameny* action [for wrongful discharge in violation of public policy] to proceed despite the workers' compensation exclusive remedy rule'"); *Vasquez v. Franklin Management Real Estate Fund, Inc.*, 222 Cal.App.4th 819, 832 (2013) ("Appellant cites *Cabesuela [v. Browning–Ferris Industries of California, Inc.*, 68 Cal.App.4th 101 (1998)], *Leibert v. Transworld Systems, Inc.*, and *Phillips* for the proposition that termination in violation of public policy can serve as the basis for recovery under an intentional infliction of emotional distress theory.  The cases cited all predate the Supreme Court's decision in *Miklosy* . . . , in which the court held that 'severe emotional distress arising from outrageous conduct that occurred at the worksite in the normal course of the employer-employee relationship' is the type of injury that falls within the exclusive province of worker's compensation"); see also *Howard v. Contra Costa County*, No. 13-cv-03626 NC, 2014 WL 824218, *19 (N.D. Cal. Feb. 28, 2014) ("In *Cabesuela*, the court found that a plaintiff's IIED claim, for being terminated for raising health and safety concerns related to working hours, was 'premised upon his employer's violation of a fundamental public policy' and was thus not preempted by the Workers' Compensation Act.  However, as explained by the Court in *Ferretti*, plaintiff's reliance on *Cabesuela* is misplaced as it was effectively overruled by the California Supreme Court in *Miklosy*, which held that an IIED claim is preempted even where it is based on conduct that violates a fundamental public policy.  Howard has not provided any authority supporting the proposition that the defendants' alleged negligent acts of hiring, which placed Howard in a position to witness a crime and be harassed and retaliated against for reporting the crime, exceed the risk inherent in the employment relationship"); *Ferretti*, 2012 WL 3638541 at *11 ("Plaintiff's reliance on *Cabesuela* is misplaced.

1  Since *Cabesuela* was decided in 1998, the California Supreme Court has held that an IIED claim

2  is preempted even where it is based on conduct that violates a fundamental public policy").

3        Given the California Supreme Court's holding in *Miklosy*, and the authority cited above,

4  the court concludes that, under well-established California law, Langevin may not assert an IIED

5  claim against the individual defendants based on their purported violation of fundamental public

6  policy; the exclusive remedy for such a claim is provided by the WCA.

7        Nor may Langevin avoid WCA exclusivity by asserting, under *Livitsanos*, that the

8  individual defendants' conduct was beyond the "normal course of the employer-employee

9  relationship," and thus was not a normal risk inherent in the employment relationship.[72] As the

10 *Miklosy* Court observed, "whistleblower retaliation is [ ] a risk inherent in the employment

11 relationship."  *Miklosy*, 44 Cal.4th at 903.  Langevin alleges that FedEx and the individual

12 defendants retaliated against him *as a result of his whistleblowing*.[73]  He also alleges that the

13 emotional distress he suffered was a direct result of defendants' retaliatory actions.[74]

14       The retaliatory acts alleged in the complaint – i.e., writing Langevin up for pretextual and

15 fabricated reasons; yelling and screaming at him; seeking "dirt" on Langevin that could be used

16 to discipline or demote him; being hostile to him; and demoting him[75] are the type of conduct that

17

18       [72]MTR at 13-14.

19
20       [73]Complaint, ¶ 20 ("*Due to Plaintiff's vocal complaints about the FAR violations and
     attempts to bring FedEx into compliance*, FedEx subjected Plaintiff to retaliation in terms and
21   conditions of his employment" (emphasis added)).

22       [74]*Id.*, ¶ 33 ("Defendants' despicable and outrageous conduct as described herein was
     malicious and oppressive and done with a conscious disregard of Plaintiff's rights.  All said
23   conduct was intentional and done to oppress and humiliate Plaintiff.  Defendants knew that said
     conduct would cause Plaintiff to suffer severe emotional distress.  Said conduct, in fact, caused
24   Plaintiff to suffer severe emotional distress").

25       [75]Complaint, ¶ 20.  The proposed first amended complaint elaborates on these allegations
26   as follows:

27       "Due to Plaintiff's vocal complaints about the FAR violations and attempts to bring
        FedEx into compliance, FedEx subjected Plaintiff to retaliation in terms and
28      conditions of his employment.  Some examples of the retaliation include, but are

1   California courts, following *Miklosy*, have concluded falls within the normal risks inherent in the

2   employment relationship. See, e.g., *Silva v. Solano County*, No. 2:13-cv-02165-MCE-EFB, 2014

3   WL 5501225, *4 (E.D. Cal. Oct. 30, 2014) ("Plaintiff also attempts to characterize the retaliation

4   she claims to have endured (as a result of her alleged efforts to remedy Medi–Cal billing abuses)

5   as not being a 'normal part of the employment relationship.'  That argument fails.  The California

6   Supreme Court has rejected the contention that whistleblower retaliation is not an inherent risk in

7   the employment relationship.  Where alleged misconduct by an employer is a normal part of the

8   employment relationship, such as demotions, criticism, and negotiations of grievances, an

9   employee who suffers emotional distress cannot avoid the exclusivity rule by simply

10  'characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended

11  to cause emotional disturbance resulting in disability.'  Therefore, to the extent that Plaintiff seeks

---

not limited to:

a.   Defendants Cusato, Sobczak, and Earls repeatedly writing him up and suspending him for intentionally fabricated, pre-textual reasons, such as writing him up for following the well-established pattern and practices at LAX;

b.   yelling and screaming at Plaintiff by FedEx managers that include Defendants Cusato and Earls, along with other managers;

c.   Defendants Cusato and Earls meeting with Plaintiff's coworkers and managers from other airlines, defaming him, and asking for any 'dirt' on Plaintiff which they could use to discipline/demote him;

d.   Defendants Cusato and Earls treating Plaintiff in a hostile and rude manner as well as shunning Plaintiff;

e.   Defendant Cusato cornering Plaintiff and falsely accusing him of theft;

f.   Defendants Earls and Cusato, along with other managers, harassing Plaintiff with  threatening him with prosecution of fabricated criminal charges on at least dozens occasions if he continued to follow the law when working on planes that had corrosion on them;

g.   Defendant Cusato confronting Plaintiff with manner specifically outlawed in a provision in the company handbook; then writing Plaintiff up pursuant to the same provision in direct retaliation for Plaintiff's whistleblowing; and

h.   Defendants Cusato, Sobczak, and Earls ultimately demoting Plaintiff from his Lead position even though he was and is the most qualified AMT at FedEx and at the entire LAX.

(See Martirosyan Decl., Exh. C. ("Proposed First Amended Complaint"), ¶ 20.)

relief on her IIED claim as a result of emotional distress endured in response to her questioning and criticizing of the County's Medi-Cal billing policy, she cannot do so through her IIED claim because, under California law, whistleblowing is within the scope of employment and therefore preempted by worker's compensation. . . . [T]o the extent that Plaintiff bases her IIED claim on her alleged whistleblowing activities, Defendants' Motion is GRANTED without leave to amend"); *Howard*, 2014 WL 824218 at *19 ("Here, Howard argues that the harassment and retaliation defendants allegedly directed at him exceed the normal risk of the employment relationship.  Howard further asserts that he 'was a whistleblower and reported a serious matter of public concern only to be harassed, retaliated against, and mocked for standing-up for the rights and the best interests of the public.' . . .  Howard has not provided any authority supporting the proposition that the defendants' alleged negligent acts of hiring, which placed Howard in a position to witness a crime and be harassed and retaliated against for reporting the crime, exceed the risk inherent in the employment relationship.  Accordingly, the fifth and seventh claims for negligent hiring and the eighth claim for IIED are dismissed"); *Obacz v. Northridge Hospital Medical Center*, No. B246092, 2015 WL 294828, *5 (Cal. App. Jan. 22, 2015) (Unpub. Disp.)[76] ("We have held that the employee's emotional distress claims were barred where an employer 'berated and humiliated [a plaintiff], criticized his job performance, and insulted him with profanities on a regular basis.'  There, we stated that '[a]n employer's intentional misconduct in connection with actions that are a normal part of the employment relationship . . . resulting in emotional injury is considered to be encompassed within the compensation bargain, even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.'  Workers' compensation ordinarily provides the exclusive remedy for such an injury.'  We explained that, '[t]he misconduct all occurred in the workplace and

---

[76]"Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

1    involved criticisms of job performance or other conflicts arising from the employment.  Although

2    the misconduct was offensive and clearly inappropriate, we believe that it all arose from risks

3    encompassed within the compensation bargain.   This does not by any means excuse the

4    misconduct, but compels the conclusion that, absent a violation of a fundamental public policy,

5    which has not been shown, the workers' compensation exclusivity rule applies to any emotional

6    injury arising from the described misconduct.'   Similarly here, Lynne's factual contentions

7    regarding intentional and negligent infliction of emotional distress are entirely based on

8    employment-related conversations she had at work with her managers, which she alleges insulted

9    her honor, caused her to cry, and humiliated her.   Although the misconduct, if true, is

10   inappropriate, Lynne is nonetheless barred from recovering for her emotional distress in tort.  Her

11   injuries clearly occurred at the worksite and in the normal course of the employer-employee

12   relationship.   Lynne's exclusive remedy is via the Worker's Compensation Act.   Furthermore,

13   Lynne failed to provide and we ascertain no violations of fundamental public policy by applying

14   the exclusivity provision in this case," citing *Singh v. Southland Stone, U.S.A., Inc.*, 186

15   Cal.App.4th 338, 366-67 (2010)).[77]

16

17          [77]See also *Grotz v. Kaiser Foundation Hospitals*, No. C-12-3539 EMC, 2012 WL 5350254,

18   *11 (N.D. Cal. Oct. 29, 2012) ("The *Miklosy* Court reaffirmed the holding in *Shoemaker v. Myers*
     that the exception for employer conduct that 'exceeds the risks inherent in the employment

19   relationship' normally does not apply to emotional distress claims based on whistleblower

20   retaliation.   In *Shoemaker*, involving emotional distress claims arising out of an allegedly
     retaliatory termination, the Court had held that such emotional distress claims were preempted by

21   worker's compensation.   *Shoemaker* reasoned that '[t]he kinds of conduct at issue (e.g., discipline
     or criticism) are a normal part of the employment relationship.   Even if such conduct may be

22   characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers'

23   compensation exclusivity provisions.'   Plaintiff's allegations here concern Kaiser's alleged
     misconduct in the course of handling her workplace grievances, disciplining her, and ultimately

24   firing her.   As all of the alleged misconduct arose in the context of her employment relationship,
     her claims fall squarely within the kind of conduct that *Cole*, *Shoemaker*, and *Miklosy* found to

25   be pre-empted by workers' compensation"); *Ferretti*, 2012 WL 3638541 at *12 ("In the instant

26   case, Plaintiff's IIED claim alleges that she suffered severe emotional distress after she was
     'subjected to harassment, retaliation, threats, and termination for reporting what she in good faith

27   believed to be unlawful and unethical conduct by Defendant.'   Under *Miklosy*, an IIED claim

28   based on such conduct does not qualify under either exception to the preemption rule.

1    Indeed, although Langevin argues in his motion to remand that the conduct giving rise to

2  his emotional distress was not an inherent part of a typical employment relationship,[78] he

3  recognizes, both in his complaint and the proposed first amended complaint, that the retaliation

4  affected the "terms and conditions of his employment."[79]   Langevin must concede this fact, as the

5  false write-ups, discipline, demotion, and humiliation he allegedly suffered all occurred at the

6  jobsite and affected generally recognized aspects of the normal employment relationship.   See,

7  e.g., *Singh*, 186 Cal.App.4th at 366-67 ("Singh sought damages for intentional infliction of

8  emotional distress based on evidence that Johar mistreated him at work.   Singh testified that Johar

9  berated and humiliated him, criticized his job performance, and insulted him with profanities on

10  a regular basis beginning in June 2005.   Johar entered his office one day while Singh was eating

11  lunch and working on his laptop computer.   According to Singh, Johar was irate about something

12  that he wanted immediately.   When Singh responded that he would provide it after he finished

13

14  Accordingly, this Court dismisses Plaintiff's IIED claim.   Dismissal is granted without leave to

15  amend because Plaintiff is unlikely to be able to allege conduct that did not occur in the normal

16  course of the employment relationship"); *Garcia v. Witt*, No. B215187, 2010 WL 2220885, *6

17  (Cal. App. June 4, 2010) (Unpub. Disp.) ("Appellant also claims he adequately pleaded a cause

18  of action for intentional infliction of emotional distress.   He alleged: 'The conduct of Defendants,

19  as set forth above, including false statements of criminal conduct, harassment and assault and

20  battery, was so extreme and outrageous that it exceeded the boundaries of a decent society.   The

21  conduct of Defendants, including Reyes, Witt and Roski, was also outrageous as it was an abuse

22  of their supervisory power over Plaintiff, including (1) falsely accusing him of criminal or other

23  misconduct . . ., (2) retaliating against him for statutorily protected complaints, (3) ratifying

24  Defendant Reyes' tortious conduct, and (4) failing to protect Plaintiff's health and safety despite

25  Plaintiff's complaints.   Said conduct also violated public policy.'   Just as in *Miklosy v. Regents

26  of University of California*: 'The alleged wrongful conduct, however, occurred at the worksite,

in the normal course of the employer-employee relationship, and therefore workers' compensation

is [appellant's] exclusive remedy for any injury that may have resulted.'   As the court explained

in *Shoemaker v. Myers*: 'The kinds of conduct at issue (e.g., discipline or criticism) are a normal

part of the employment relationship.   Even if such conduct may be characterized as intentional,

unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity

provisions'" (citations omitted)).

27    [78]MTR at 13-14 ; MTR Reply at 5.

28    [79]Complaint, ¶¶ 20, 31; See Proposed First Amended Complaint, ¶¶ 20, 32

1   eating lunch, Johar stated that he wanted it right away and slammed the laptop computer shut onto

2   Singh's hand, which held a sandwich.  Singh also testified that on another occasion, Johar shouted

3   at him, grabbed his lapels, and threatened to throw him out of the office if he did not sign a

4   release.   We conclude that such misconduct all occurred in the normal course of the

5   employer-employee relationship.  The misconduct all occurred in the workplace and involved

6   criticisms of job performance or other conflicts arising from the employment").  The court

7   therefore concludes that under California law, Langevin cannot avoid the bar of WCA exclusivity

8   by arguing that the individual defendants' conduct exceeded the risks inherent in the employment

9   relationship.  See *Miklosy*, 44 Cal.4th at 902-03.

10        Defendants have thus carried their burden of demonstrating that, under settled California

11   law, Langevin cannot assert an IIED claim against the individual defendants based on their

12   allegedly retaliatory acts following his purported whistleblowing.  This compels the conclusion

13   that each of the individual defendants has been fraudulently joined.  Their citizenship can thus be

14   disregarded in determining whether the court has diversity jurisdiction to hear the action.[80]

15          **d.**    **Conclusion Regarding Diversity of Citizenship**

16        Because the individual defendants have been fraudulently joined, their citizenship is

17   disregarded in assessing whether complete diversity of citizenship exists.  Langevin is a California

18   citizen and FedEx is a citizen of Tennessee and Delaware.  As a result, there is complete diversity

19   of citizenship.

20

21

22

_____

23        [80]Langevin requests, in the alternative, that the court permit him to file the proposed first

24   amended complaint, which, as noted, includes additional facts concerning the allegedly retaliatory
     acts of the individual defendants following Langevin's whistleblowing.  See note 75, *supra*.

25   Because the amended complaint is based on the same conduct that the court has concluded is part
     of the employment relationship, i.e., writing up and disciplining Langevin, being hostile and rude

26   to him, yelling at him, harassing him regarding his work performance, and demoting him (see
     Proposed First Amended Complaint, ¶ 20), permitting the amendment would be futile, as it would

27   not change the court's analysis or conclusion.  Accordingly, the court denies Langevin's request

28   to file the proposed first amended complaint.

e.      **Whether the Jurisdictional Amount in Controversy is Satisfied**

As noted, "[t]he district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between . . . citizens of different States."  28 U.S.C. § 1332(a); see also *Matheson*, 319 F.3d at 1090 ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000").  In its notice of removal, FedEx alleges that the amount in controversy exceeds $75,000 because: (1) Langevin alleges twelve separate violations of Labor Code § 1102.5, which provides a penalty of $10,000 per violation; (2) Langevin's wage loss due to demotion at the time of removal was $10,514; and (3) Langevin's attorneys' fees exceeded $5,000 at the time of removal.[81]  Based on these allegations, and the evidence adduced by defendants in support of their notice of removal, the court concludes that defendants have demonstrated, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.  See *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) ("[Where] it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled[,] . . . [courts] apply a preponderance of the evidence standard").[82]

**3.      Conclusion Regarding Plaintiff's Motion to Remand**

For the reasons stated, the court has subject matter jurisdiction to hear this action.  Accordingly, Langevin's motion to remand must be denied.

**B.      Defendants' Motion to Dismiss**

**1.      Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*

---

[81]See Removal at 2-3; see also Complaint, ¶¶ 23, 24, 25, 26, 28, 29, 35, 36, Prayer for Relief; Declaration of Steve Sobczak in Support of Petition and Notice of Removal of Civil Action, Docket No. 4 (Oct. 20, 2014), ¶ 9; Declaration of Jane M. Flynn in Support of Petition and Notice of Removal of Civil Action, Docket No. 2 (Oct. 20, 2014), ¶ 5.

[82]Indeed, Langevin does not dispute this point in his motion to remand.

1   *v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual

2   allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences

3   from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38

4   (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

5        The court need not, however, accept as true unreasonable inferences or conclusory legal

6   allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 540 U.S.

7   544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

8   need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

9   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

10   the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain

11   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'

12   . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court

13   to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

14   *v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must

15   be enough to raise a right to relief above the speculative level, on the assumption that all the

16   allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United*

17   *States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion

18   to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must

19   be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly* ).

20        **2.**    **Whether the Court Should Grant Defendants' Motion to Dismiss**

21        Defendants move to dismiss plaintiffs' first, second, and third causes of action against the

22   individual defendants.[83]  In the alternative, they seek to have the individual defendants dismissed

23   under Rule 21 of the Federal Rules of Civil Procedure as misjoined.[84]

24        "[A] fraudulent joinder finding compels dismissal of the 'sham defendants,'" and thus the

25   district court has the "obligation to expressly dismiss the 'sham defendants' before proceeding

26

27     [83]MTD at 1.

28     [84]*Id.*

with the case." *Isaacs v. Broido*, 358 Fed. Appx. 874, 876-77 (9th Cir. Dec. 4, 2009) (Unpub. Disp.) ("Analytically, a fraudulent joinder finding compels dismissal of the 'sham defendants.' However, that does not relieve the district court of its obligation to expressly dismiss the 'sham defendants' before proceeding with the case," citing William W. Schwarzer, et. al., CAL. PRACTICE GUIDE: FED. CIV. PROC. BEFORE TRIAL § 2:687.1 (2009) (in turn citing *Farias v. Bexar County Board of Trustees*, 925 F.2d 866, 872 (5th Cir. 1991) (instructing practitioners to bring a Rule 12(b)(6) motion to achieve final dismissal of any fraudulently joined defendants)).

For the reasons discussed, Langevin has failed to state a viable IIED claim against the individual defendants. He does not respond, moreover, to defendants' assertion that he cannot state a claim against the individual defendants for retaliation in violation of public policy and violation of California Labor Code § 1102.5. Rather, he appears to concede that the individual defendants were named in error in the first and second causes of action.[85] Consequently, the court concludes he has abandoned such claims. See *Marin Alliance for Medical Marijuana v. Holder*, No. C 11-05379 SBA, 2012 WL 2862608, *11 (N.D. Cal. July 11, 2012) ("The Court finds that dismissal of this claim is appropriate. . . . Plaintiffs have failed to oppose Defendants' motion with respect to this claim, which the Court construes as Plaintiffs' absence of dispute with Defendants' arguments and an abandonment of the claim," citing *Walsh v. Nevada Dep't of Human Resources*, 741 F.3d 1033, 1037 (9th Cir. 2006)); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 586 F.Supp.2d 1109, 1131 (N.D. Cal. 2008) ("In support of their third claim for relief for violation of state antitrust laws, the indirect plaintiffs alternatively allege that defendants violated 'Pennsylvania common law.' Defendants move to dismiss this claim on the ground that there is no authority in Pennsylvania, common law or otherwise, allowing for damages sustained as a result of antitrust violations. Plaintiffs' opposition does not address this claim or defendants' arguments, and thus the Court concludes that plaintiffs have abandoned this claim. The Court GRANTS defendants' motion to dismiss without leave to amend"); *Gillespie v. City of*

---

[85]Compare Proposed First Amended Complaint at 7 (naming only FedEx as a defendant on the first cause of action); *id*. at 9 (naming only FedEx as a defendant on the second cause of action).

*Indianapolis*, 13 F.Supp.2d 811, 826 (S.D. Ind. 1998) ("Gillespie did not present arguments regarding his bill of attainder and *ex post facto* claims in his motion for preliminary injunction and, more importantly, failed to respond to the City's and the United States' motions to dismiss these claims in his response brief, arguing only his Commerce Clause, Tenth Amendment, Fifth Amendment, and Contract Clause claims.  Accordingly, we *grant* the City's and the United States' motions to dismiss as to these claims in Count III").

Because Langevin cannot state an IIED claim against the individual defendants under California law, and because he has abandoned his other claims against them, defendants' motion to dismiss Langevin's claims against the individual defendants must be granted.  See, e.g., *Didyoung v. Allstate Ins. Co.*, No. CV 12-348-PHX-GMS, 2012 WL 1983779, *5 (D. Ariz. June 4, 2012) ("Plaintiffs have not alleged facts adequate to support a claim against Frontier in 'breach of contract' or 'bad faith.'  Nor have Plaintiffs indicated any other factual basis under which they may have a 'right to relief.'  Because Frontier was fraudulently joined, and because Plaintiffs have not presented a cognizable claim against Frontier, dismissal of Defendant Frontier under Rule 12(b)(6) is appropriate"); *Stoll v. Allstate Ins. Co.*, No. 02-CV-916J (JAH), 2002 WL 31056802, *2 (S.D. Cal. Sept. 4, 2002) ("The Court, in its evaluation of a dismissal for failure to state a claim upon which relief can be granted, must (1) construe the complaint in the light most favorable to the plaintiff, (2) accept all well-pled factual allegations as true, and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  Following a consideration of this established rule, dismissal is proper only where there is either a 'lack of cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'  As discussed above, Plaintiff has failed to state a cause of action against Defendant Konishi.  Because the Court finds that Defendant Konishi was fraudulently joined, Defendant's motion to dismiss Plaintiff;s third claim is GRANTED"); see also *Isaacs*, 358 Fed. Appx. at 876-77 (concluding that fraudulently joined defendants should have been dismissed by the district court after the fraudulent joinder finding, either *sua sponte*, or by granting a Rule 12(b)(6) motion); *Gasnik v. State Farm Ins. Co.*, 825 F.Supp. 245, 249 (E.D. Cal. 1992) (concluding that fraudulently joined defendants had to be dismissed).

**3.  Whether the Court Should Grant Defendants' Motion for a More Definite Statement**

Under Rule 12(e) of the Federal Rules of Civil Procedure, "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." FED.R.CIV.PROC. 12(e).  Motions for more definite statement

> ". . . are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules.  Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted.  A Rule 12(e) motion is more likely to be granted where the complaint is so general that ambiguity arises in determining the nature of the claim or the parties against whom it is being made.  Such a motion is likely to be denied where the substance of the claim has been alleged, even though some of the details are omitted."  *Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1077 (C.D. Cal. 1994) (internal citations omitted).

"Thus, a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996); see also *United States v. Ragan*, No. CV 10-7654 RSWL (MANx), 2011 WL 2940354, *2 (C.D. Cal. July 21, 2011) ("A motion for a more definite statement fails where the complaint is specific enough to apprise the moving party of the substance of the claim being asserted").

Defendants argue that Langevin should be required to provide a more definite statement specifying the specific constitutional, statutory, or regulatory basis for the public policy underlying his first cause of action for retaliation in violation of public policy.[86]  Specifically, they argue that because a wrongful discharge/ retaliation in violation of public policy claim must be "carefully tethered to fundamental policies that are delineated in constitutional and statutory provisions," see *Miklosy*, 44 Cal.4th at 898 (citing *Gantt v. Sentry Insurance*, 1 Cal.4th 1083, 1085 (1992)), they

---

[86]MTD at 12.

1  are entitled to know the "specific basis for the allege public policies underlying the common law
2  retaliation claim."[87]   The complaint pleads, as respects Langevin's first cause of action, that it
3  "arises under the public policies of the State of California and the United States.  These public
4  policies include, without limitation, statutes and regulations prohibiting retaliation due [to]
5  engaging in a protected activity, including but not limited to the FARs, the Occupational Safety
6  and Health Acts of the United States and the State of California, laws and regulations prohibiting
7  employment retaliation, among other laws and regulations."[88]

8      Although defendants identify the allegations in Langevin's complaint that they allege are
9  vague and ambiguous, they offer no argument why, in context and considered in light of the facts
10  pled in Langevin's complaint and supplied with his briefing associated with these motions, the
11  allegation is so vague that defendants "literally cannot frame a responsive pleading." *Bureerong*,
12  922 F.Supp. at 1461.   Indeed, a "motion for a more definite statement is used to attack
13  unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to
14  apprise the defendant of the substance of the claim asserted against [it]." *San Bernardino Public*
15  *Employees Ass'n v. Stout*, 946 F.Supp. 790, 804 (C.D. Cal. 1996) (citing *Famolare, Inc. v.*
16  *Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D. Cal. 1981)).   Here, it does not appear that
17  defendants are deprived of the ability for frame a responsive pleading; indeed, defendants' own
18  briefing in association with Langevin's motion to remand and its motion to dismiss demonstrate
19  that defendants are aware of the "substance of the claim asserted against [it]," i.e., that Langevin
20  asserts that FedEx violated public policy by retaliating against him after he filed a whistleblower
21  complaint relating to FedEx's purportedly deficient maintenance procedures.   The detail that
22  defendants seek regarding Langevin's first cause of action and the laws and policies prohibiting
23  retaliation that they are premised upon, to the extent it is unknown by defendants presently, is
24  likely obtainable through the discovery process. *Medrano v. Kern County Sheriff's Officer*, 921
25  F.Supp.2d 1009, 1018 (E.D. Cal. 2013) ("The Court may also deny the motion if the detail

---

27  [87]*Id.*

28  [88]Complaint, ¶ 22.

1   sought by a motion for a more definite statement is obtainable through the discovery process,"

2   citing *Beery v. Hitachi Home Electronics (America), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal.

3   1993)).

4        In sum, defendants offer no argument suggesting why the pleadings are so deficient that

5   they could not possibly file a responsive pleading and it appears, based on the arguments made

6   in defendants' moving papers, that defendants are in fact aware of the "substance of the claim"

7   asserted against them. *Stout*, 946 F.Supp. at 804.  Recognizing that motions for a more definite

8   statement are "viewed with disfavor and rarely granted," *Sagan*, 874 F.Supp. at 1077, the court

9   denies defendants' motion for a more definite statement.  Compare *Public Lands for the People,*

10  *Inc. v. U.S. Dep't of Agriculture*, 733 F.Supp.2d 1172, 1199-1201 (E.D. Cal. 2010) (recognizing

11  that motions for a more definite statement are rarely granted and ordering a more definite

12  statement where the plaintiff's complaint was "argumentative, prolix, replete with redundancy,

13  and largely irrelevant," and citing *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996)).

14

15                                      **III.  CONCLUSION**

16        For the reasons stated, the court denies Langevin's motion to remand.  Because the

17  individual defendants were fraudulently joined, the court grants defendants' motion to dismiss the

18  individual defendants from the action.  The court denies defendants' motion for a more definite

19  statement under Rule 12(e) of the Federal Rules of Civil Procedure.

20

21

22  DATED: March 6, 2015                  _____

23                                        MARGARET M. MORROW
                                          UNITED STATES DISTRICT JUDGE

24

25

26

27

28